FARRELL DORRITY, EXECUTOR, ETC., OF SARAH M. DOR-RITY, DECEASED, RESPONDENT, v. AUGUSTUS L. RAPP, APPELLANT.

*Excavation made in the city of New York — liability for damages occasioned by — chapter 6 of 1855 — Notice.*

Under chapter 6 of 1855, providing that where an excavation is intended to be made in the city of New York to a depth of more than ten feet, and there shall be a wall standing on adjoining land near to the boundary line of such lot, "the person causing such excavation to be made, *if afforded the necessary license to enter on the adjoining land, and not otherwise,* shall at all times" preserve and support such wall at his own expense, the party making the excavation is not liable for any damage occasioned by the excavation, unless the license to enter upon the adjoining land be given, nor is his liability affected by the fact that he failed to notify the owner of the adjoining land or building of his intention to make the excavation.

Appeal from a judgment entered in favor of the plaintiff on a verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried. In the year 1872, plaintiff's testatrix, Mrs. Sarah M. Dorrity, and the defendant, were respectively owners of adjoining houses, situate on the southerly side of Thirty-second street, between Second and Third avenues, in the city of New York. These houses appear to have been similar in many respects, and had been erected with basements, but without cellars, and had independent walls. On or about March 21, 1872, the defendant entered into an agreement with one Sullivan, a mason, to excavate and construct a cellar beneath his house. Sullivan entered into the performance of his contract, employing workmen therefor, and completed the same on or about April 26, 1872. During this time, Mrs. Dorrity's house was held under lease by a Mr. Gibson, and occupied by him. It was claimed on the part of the plaintiff that injuries were occasioned to her house by the careless and negligent manner in which the work was done, and that defendant was liable, because he had not protected the property of plaintiff's testatrix, nor had he asked permission to enter upon her premises for the purpose of shoring up the wall as might have been done under chapter 6, of the Laws of 1855.

*Alexander Thain*, for the appellant. It appearing that the work was not *per se* a nuisance, and might have been done without injury to the neigboring houses, and further, that it had been done by the employes of a competent person under contract, defendant was not liable. (Wharton on Negligence, § 818, and cases cited; *McCafferty* v. *Spuyten Duyvil, etc., R. R. Co.*, 61 N. Y., 178; *Blake* v. *Ferris*, 5 N. Y., 48; *Kelly* v. *The Mayor*, 11 id., 432; *King* v. *Livermore*, 9 Hun, 298; *Butler* v. *Hunter*, 10 W. R., 214.) Defendant was not, by the terms of chapter 6, of the Laws of 1855, bound to protect the wall of Mrs. Dorrity's house, unless " afforded the necessary license to enter on the adjoining lands." (*Sherwood* v. *Seaman*, 2 Bosw., 127; 2 R. S. [5th ed.], p. 1002, § 34.) At common law adjoining owners had an easement by way of lateral support in the lands of each other, to the extent only of a right of support of the land itself,

unincumbered by additional weight from building or other artificial superstructures. (2 Wash. on Real Prop., 75; Wash on Easements, 542–564; *Panton* v. *Holland,* 17 Johns, 92; *Farrand* v. *Marshall,* 21 Barb., 409; S. C., 19 id., 380; *Thurston* v. *Hancock,* 12 Mass. R., 221; *Radcliff, Ex.,* v. *Mayor, etc., of Brooklyn,* 4 N. Y., 201.)

*Joseph Fettretch,* for respondent.

DAVIS, P. J. :

This action was brought to recover damages for injuries to a building belonging to the respondent's testatrix, alleged to have been caused by excavations made by the appellant on his adjoining lot, for the purpose of sinking a cellar and rebuilding the cellar wall. By chapter 6, of the Laws of 1855, it is provided that whenever excavations in the city and county of New York "shall be intended to be carried to the depth of more than ten feet below the curb, and there shall be any party or other wall, wholly or partly on adjoining land, and standing upon or near the boundary lines of such lot, the person causing such excavations to be made, if afforded the necessary license to enter on the adjoining land, and not otherwise, shall at all times, from the commencement until the completion of such excavation, at his own expense, preserve such wall from injury, and so support the same by a proper foundation that it shall remain as stable as before such excavations were commenced." (2 R. S. [5th ed.], 1002, § 34.)

This provision makes important changes in the common law, in the cases to which it is applicable. But a careful reading of it shows that it has no application to any case in which the necessary license to enter on the adjoining land was not afforded to the party making the excavation. Where the license is "afforded" "*and not otherwise,*" the statute imposes the duty created by it, and it has no application whatever to a case where the necessary license has not been afforded, no matter which party may be in fault for not having given or obtained it. In this case it appears that no license to enter upon the premises of the testatrix was afforded or given. Hence the statute has no application to the case; it is governed altogether by the requirements of the common law independently of the statute.

But the case was tried upon the mistaken theory that if the

appellant failed to give notice to the owner of the adjacent building of his intention to make the excavation, she was relieved from the necessity of *affording* the license, and he was subjected to all the duties and obligations of the act, as though license had already been given. Hence, on the trial, the plaintiff sought to show that neither the defendant nor his contractor gave any notice to the owner, or tenants of the adjacent premises, of the intention to excavate the cellar; and the defendant sought to show that the contractor had given such notice to an occupant of the premises.

The plaintiff, Mrs. Dorrity, was herself the first witness. She testified that the defendant did not ask her permission to enter her premises for any purpose, and gave her no notice of his intention to alter his house. She was then asked whether Sullivan (the contractor who did the work for defendant), or any one on his behalf called on her and asked for any permission to enter upon her premises. This was objected to as incompetent and immaterial. The objection was overruled, and the defendant excepted, and the witness answered " No." This evidence was given and received obviously for the purpose of establishing that the defendant by neglecting to give notice of his intended excavation to the owner of the adjoining premises, or her tenant, had subjected himself to the duties imposed by the statute, as though license had been given, and the learned judge in his charge, after reading the statute, said : " It seems this cellar was dug, as the plaintiff claims, without any knowledge or notice to her, and therefore there was no opportunity on her part of granting any permission or license to the defendant, even if it had been sought for." And when the plaintiff's counsel asked him to charge that, under the law of 1855, the defendant was bound to ask license to enter the plaintiff's premises for the purpose of protecting her walls, and that it was his duty to make application for the license said, " I will charge that the plaintiff was not obliged to give a license unless one was required of her." The defendant's counsel requested the court to charge on this subject that the defendant was not obliged to seek a license from the plaintiff to enter her premises, and that the plaintiff was bound to tender it. The court said, " I decline to charge in the form you put it;" and defendant's counsel excepted. An examination of the case throughout, shows that it was tried upon the theory above suggested; and it is scarcely

doubtful that the jury in disposing of the case acted upon the idea that if the defendant had not given notice so that the owner of the injured premises had an opportunity to give the license provided for by the act of 1855, the duty of the defendant became the same as though he had received such license. This fact gives point to the question put to Mrs. Dorrity; we therefore think the ruling of the court erroneous. If the evidence was admitted for any other purpose it certainly ought to have been disclosed, and the court should have instructed the jury that the statute of 1855 had nothing whatever to do with the case. It was a case in which no license had been afforded, and it is only in cases where the license has actually been given, that the statute applies at all. It was proved by the defendant that the work was done under a contract entered into between himself and one Sullivan, who undertook to perform it in a good and workmanlike manner for a specified sum, and to make perfect all walls or partitions disturbed or injured by the aforesaid alterations, and to make good all damages caused for the same. The court charged the jury that if they believed the work could have been done so as not to produce injury to the plaintiff's property, and that the injury of which the plaintiff complains was the result of negligence of Mr. Sullivan or his servants, there must be a verdict for the defendant. This charge tends strongly to confirm our impression that the case was disposed of by the jury upon supposed obligations or duties imposed upon the defendant by the act of 1855, for under that charge and the contract and the evidence in the case, it is hardly possible that the verdict could have been rendered upon any other ground.

We do not feel called upon to consider the other exceptions taken in the course of the trial, nor to pass distinctly upon the question whether or not the contract between the defendant and Sullivan was sufficient to exempt the former from all liability for injury done to the plaintiff's premises in the performance of the contract.

There ought to be a new trial in the case.

The judgment should be reversed and a new trial ordered, with costs to abide event.

DANIELS, J., concurred.    BRADY, J., dissented.

Judgment reversed, new trial ordered, costs to abide event.